Case 3:25-cv-00136   Document 14   Filed on 05/02/25 in TXSD   Page 1 of 7

United States District Court
Southern District of Texas
**ENTERED**
May 05, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LUZ GONZALEZ CHAPA, § § § Plaintiff, § v. § CIVIL ACTION NO. H-25-203 § EXCEL MODULAR SCAFFOLDING § AND LEASING COMPANY and § BLANCHARD REFINING COMPANY, § LLC, § Defendants. § | |

**MEMORANDUM AND OPINION**

The plaintiff, Luz Chapa, sues over injuries sustained when he fell from scaffolding while working at defendant Blanchard Refining Company's Galveston Bay Refinery in February 2023. The Galveston Bay Refinery is in Texas City, Texas, which is in the Galveston Division of the Southern District of Texas. Chapa sued one other defendant: Excel Modular Scaffolding and Leasing Corporation, which built the scaffolding at the Galveston Bay Refinery. The Excel office that oversaw and hired the personnel involved in building the scaffolding is in Houston, Texas, which is in the Houston Division of the Southern District. Chapa was employed by TWS Turn Around Welding Services, which is headquartered in Louisiana. (Docket Entry No. 1-2 at 12).

The issue is whether venue should be in the Houston Division or the Galveston Division of this district. Chapa sued Blanchard and Excel in state court in Harris County, where Excel's principal office and headquarters are located. (Docket Entries Nos. 1-2, 11). Blanchard removed to the Southern District of Texas, Houston Division. (Docket Entry No. 1). Blanchard now seeks to transfer the case to the Galveston Division, asserting that it is a more convenient venue because of the following: the premises and physical evidence are all located in Galveston County; the

accident injuries occurred in Galveston County and Chapa received his initial medical evaluation and treatment there; and most, if not all, of the fact witnesses likely reside and or work in Galveston County. (Docket Entry No. 12 at 4).

Chapa opposes the motion to transfer venue. (Docket Entry No. 12). Chapa argues that venue is appropriate in the Houston Division because he resides in Harris County and Excel's office is in Harris County. (*Id.* at 6-7). Chapa also contends that the Houston Division is a convenient venue because both Blanchard's counsel's and Chapa's counsel's offices are in downtown Houston. (*Id.* at 7).

Title 28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Transfer under § 1404(a) "is properly granted only if the moving party clearly establishes good cause by clearly demonstrating that a transfer is for the convenience of parties and witnesses, in the interest of justice." *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024) (quotation marks and quoting reference omitted). The movant's burden is not satisfied by a showing that the transferee venue "is more likely than not to be more convenient." *Id.* (quotation marks and quoting reference omitted). "[T]he fact that litigating would be more convenient for the defendant elsewhere is not enough to justify transfer." *Id.* Rather, the movant must "clearly [] demonstrate that its chosen venue is clearly more convenient." *Id.* (quotation marks and quoting reference omitted). This requires showing "(1) that the marginal gain in convenience will be significant, and (2) that its evidence makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will actually materialize in the transferee venue." *Id.*

To determine whether to transfer, a court examines private and public factors. *Id.* The private factors are: "(1) the relative ease of access to sources of proof; (2) the availability of

2

compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious[,] and inexpensive." *Id.* (quotation omitted). The public factors are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Id.* (alteration and quotation omitted). "A plaintiff's choice of forum is given some—significant but non-determinative—weight." *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 767 (5th Cir. 2016) (quotation omitted). These factors are neither "exhaustive" nor "exclusive," and "none can be said to be of dispositive weight." *In re Volkswagen*, 545 F.3d at 313 (alteration and quotation omitted). The court must "balance a number of case-specific factors" and conduct "an 'individualized, case-by-case consideration of convenience and fairness.'" *In re Rolls Royce Corp.*, 775 F.3d 671, 678 (5th Cir. 2014) (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988)).

Blanchard argues that certain of these factors are neutral as applied to the transfer of this case from the Houston Division to the Galveston Division: the availability of compulsory process to secure the attendance of witnesses; all other practical problems that make trial of a case easy, expeditious, and inexpensive; the familiarity of the forum with the law that will govern the case; and the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. (See Docket Entry No. 10 at 7).

Blanchard also argues that the remaining four factors weigh in favor of transferring the case to the Galveston Division. Blanchard asserts that the "relative access to sources of proof" favors transfer to Galveston, because: (1) all of the Galveston Bay Refinery's business records,

3

including records relating to the incident, are located at the Refinery in Texas City; and (2) inspections, photographing, or videoing of the site and physical evidence, such as the scaffolding, will necessarily take place in Texas City. (*Id.* at 8-9).

Chapa counters that Blanchard's assertions that all the evidence is in the Galveston Division is factually incorrect. (Docket Entry No. 12 at 7). Chapa states that he lives in the Houston area, where most of his medical providers are located. (*Id.*). He also asserts that the Houston Division and Galveston Division courthouses are only 52 miles apart and that certain witnesses and business records located in the northern part of Galveston County are closer to the Houston Division's courthouse than the Galveston Division's courthouse. (*Id.*). While Blanchard's business records are in Galveston County, Excel's offices are in Harris County and Louisiana. (*Id.* at 8). Chapa asserts that much of the relevant evidence will be located in Harris County. (*Id.*).

The accident happened in the Galveston Division. If an inspection of the premises and the scaffolding is needed during discovery or trial, that can only occur in Galveston County. Other evidence in the case, including documents from Blanchard and from Excel, are both in Galveston and Houston. On balance, the record suggests that more relevant evidence is located in Galveston than in Houston. This factor weighs in favor of transferring venue to Galveston.

Blanchard argues that the "cost of attendance for willing witnesses" factor also weighs in favor of transfer because any Galveston Bay Refinery employee with knowledge of facts relevant to the underlying incident works in Texas City and likely resides within the Galveston Division. (*Id.* at 9). Blanchard points to: (1) two witnesses who are employees of the Galveston Bay Refinery, Michael Bias and Christie Millard, who both reside in the Galveston Division; and (2) four potential witnesses working at TWS whose residences are not known but "each [of whom]

4

works for a company that regularly provides services at the Galveston Bay Refinery." (*Id.* at 10). Chapa argues that this factor favors the Houston Division because Excel and TWS Turn Around Welding Services are both in Louisiana, and "[s]hould witnesses from Louisiana need to testify, it would likely be easier for them to fly to Houston ... which has two major airports." (Docket Entry No. 12 at 8). Of course, one of those airports, likely the most convenient for travelers from Louisiana, is Hobby Airport, located between the Galveston Division and the Houston Division. Chapa also argues that Bias and Millard, the two witnesses employed by the Galveston Bay Refinery, live just as close, if not closer, to the federal courthouse in Houston as they do to the federal courthouse in Galveston. (*Id.*).

Other than medical care — which was first provided in Galveston and then in Houston — the witnesses appear to be party employees. Employees at the Blanchard Refinery work in the Galveston Division. They may live in either the Galveston Division or the Houston Division; the record does not make this clear. Whether there are witnesses who are employees of contractors or subcontractors, and where they might live, is unclear. Employees of Excel apparently office in the Houston Division but clearly work at locations in the Galveston Division, such as the Blanchard Refinery. The plaintiff's employer, TWS Turn Around Welding Services, is in Louisiana. While the location of both the Houston and Galveston federal courthouses make compulsory process to require the attendance of Texas City witnesses available at either place, Texas City is closer to Galveston than to Houston. The plaintiff is a resident of Harris County, and the medical providers who have treated him since the date of the accident are in Harris County. The convenience of the parties and of expert witnesses is entitled to less weight than that of nonparty witnesses. *See Houston Trial Reports, Inc. v. LRP Publs., Inc.*, 85 F. Supp. 2d 663, 669 (N.D. Tex. July 20, 2004) ("The availability and convenience of nonparty witnesses, rather than that of party and expert

5

witnesses, is accorded the greatest weight in a transfer of venue analysis."). The place of work of the nonparty and party eyewitnesses appears to weigh in favor of transferring venue to the Galveston Division.

Blanchard also contends that the "relatively lighter" caseload of the Galveston Division "shifts 'the administrative difficulties flowing from court congestion' factor in favor of transfer. (*Id.* at 11). Chapa asserts that Blanchard's contention that the case load is lighter in the Galveston Division in "pure speculation," since Blanchard fails to proffer any statistics showing the difference in the caseloads per judge between the Galveston Division and Houston Division. (Docket Entry No. 12 at 8-9). In the court's experience, both the Galveston and Houston Divisions will be able to provide a timely resolution of the cases in their courts. This factor is neutral.

Finally, Blanchard asserts that because the case arises out of conditions at an industrial facility within Galveston County, the "local interest in having localized interests decided at home" factor strongly weighs in favor of transferring the case to the Galveston Division. Blanchard also contends that the potential inconvenience to Chapa of a trial in Galveston is substantially outweighed by the local interests of Galveston County employers and residents in having this lawsuit resolved in the Galveston Division. (Docket Entry No. 10 at 12). Chapa argues that because Excel's office in Harris County, Texas, is the office that hired the personnel and oversaw the scaffolding project at Defendant Blanchard's Texas City refinery, Harris County has an equally strong interest in the outcome of the case. (Docket Entry No. 12 at 9).

To the extent that there is a localized interest in the outcome of the case, that interest is stronger in Galveston than in Houston. The refinery where the injury occurred is in Galveston County. One of the major issues in this case will be whether the scaffolding at the refinery was safe. Although the Harris County office of Excel was involved in the scaffolding, the scaffolding

6

was built in Galveston County, under the supervision of Blanchard. This factor weighs in favor of transferring the case to Galveston.

Finally, Chapa's contention that the Houston Division is a more convenient venue because certain counsel are located in downtown Houston, (Docket Entry No. 12 at 7), is not persuasive. "The word 'counsel' does not appear anywhere in § 1404(a), and the convenience of counsel is not a factor to be assessed in determining whether to transfer a case under § 1404(a)." *In re Volkswagen*, 371 F.3d at 206.

In sum, the greater weight of the relevant factors supports transferring this case to the Galveston Division of the Southern District of Texas. The motion to transfer is granted. (Docket Entry No. 10). The court transfers this case to the U.S. District Court for the Southern District of Texas, Galveston Division, under 28 U.S.C. § 1404(a).

SIGNED on May 2, 2025, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge